UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RSI VIDEO TECHNOLOGIES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-00170 |
| | § | |
| VACANT PROPERTY SECURITY, LLC, *et al*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Defendants filed a motion to transfer this patent infringement suit to the Northern District of Illinois, which they contend is a more convenient forum. Their principal argument for seeking transfer is that, as compared to Galveston, Chicago offers easier access to sources of proof and is more convenient for witnesses. The Court orally granted the motion to transfer after hearing oral argument and now enters this written order **GRANTING** the motion and **TRANSFERRING** this case to the Northern District of Illinois.

## I. BACKGROUND

Plaintiff RSI Video Tech, Inc. sells wireless video security systems under the name Videofied and owns patents related to that technology, including United States Patent Number 7,463,145 (the ’145 Patent), U.S. Patent No. 7,463,146 (the ’146 Patent), and U.S. Patent No. D555,528 (the ’528 Patent). The ’145 Patent

describes a “Security Monitoring Arrangement and Method Using a Common Field Of View.” Docket Entry No. 1 ¶ 1. The ’146 Patent is for an “Integrated Motion-Image Monitoring Method and Device.” *Id.* And the ’528 Patent describes a “Mountable Security Detector.” *Id.*

Defendant Vacant Property Security LLC (VPS) is the exclusive importer and lessor of a competing wireless video security system manufactured by Quatro Electronics Limited in the United Kingdom and marketed under the name SmartAlarm Gold. Docket Entry No. 15 at 5–6. RSI filed this suit alleging that the SmartAlarm Gold product infringes the ’145 Patent, the ’146 Patent, and the ’528 Patent.

In terms of all of its products (not just the allegedly infringing SmartAlarm Gold), the vast majority of VPS’s customers are located in Chicago and Los Angeles, with each area accounting for approximately 40%. Docket Entry No. 23 at 2. Rather than sell the SmartAlarm Gold product, VPS leases the system to customers. Docket Entry No. 15 at 6. The only identified connections between SmartAlarm Gold and Texas—other than the security system being shown at a mortgage-industry trade show in Dallas—are leased systems installed at one location in Corpus Christi and at two locations in Dallas from which it was subsequently removed for reasons unrelated to this suit. *Id.* at 7–8. RSI contends that these three SmartAlarm Gold installations in Dallas and Corpus Christi

constitute the product's entire installed user base in the United States. VPS states that its general customer distribution is representative of the scope of SmartAlarm Gold's installed user base.

## II. STANDARD OF REVIEW

Convenience transfers are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The statute is intended to save time, energy, and money while at the same time protecting litigants, witnesses, and the public against unnecessary inconvenience. *Republic Capital Dev. Grp., L.L.C. v. A.G. Dev. Grp., Inc.*, 2005 WL 3465728, at *8 (S.D. Tex. Dec. 19, 2005) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). Though patent cases are appealed to the Federal Circuit, the Federal Circuit follows Fifth Circuit law on procedural issues such as section 1404's convenience analysis. *See In re Microsoft Corp.*, 630 F.3d 1361, 1363 (Fed. Cir. 2011) (applying Fifth Circuit law in reviewing a district court ruling on a motion to transfer on convenience grounds).

As a general matter, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en

banc) (*Volkswagen II*). The application of section 1404(a) is a two-part process. The court must first determine whether the venue to which transfer is sought is one in which the case could have been filed. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (*Volkswagen I*). If so, the court must then determine whether the transfer would serve "the convenience of parties and witnesses" and "the interest of justice," 28 U.S.C. § 1404(a), by weighing the following factors:

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.

*Volkswagen II*, 545 F.3d at 315 (citations and internal punctuation omitted).

## III. ANALYSIS

### A. Venue Is Proper in the Northern District of Illinois

The preliminary question under section 1404(a) is whether a civil action "might have been brought" in the destination venue. VPS seeks to transfer this case to the Northern District of Illinois. All agree that this civil action originally could have been filed in the Northern District of Illinois: the only nonforeign defendant (VPS) resides in Illinois and the allegedly infringing importation of the SmartAlarm Gold occurred there. *See* 28 U.S.C. §§ 1400(b); 1391(c)(3). Because

it is undisputed that venue is proper in the Northern District of Illinois, the Court looks to the convenience factors to decide whether transfer is warranted.

**B. Convenience Analysis**

In terms of those convenience factors, the Court finds that three favor transfer to Chicago and only one favors retaining the case in Galveston.

*1. Private Factors*

At least two of the private factors favor transfer.[1] VPS argues that important sources of proof are located in Chicago, where it is headquartered and the point-of-entry for the allegedly infringing products imported from the UK Defendants. Docket Entry No. 15 at 6–7. RSI counters that most of the documentary evidence is likely to be located in the United Kingdom where the allegedly infringing products are designed and manufactured, and that evidence located overseas is likely to be similarly accessible to this Court or the Northern District of Illinois. Docket Entry No. 20 at 12, 17.

The Court agrees with RSI that most of the evidence related to infringement is probably in the United Kingdom. But it does seem likely that documents containing relevant damages information are located in Chicago. And the Northern District of Illinois is much closer to RSI's headquarters in St. Paul,

[1] It is also likely that the factor concerning the availability of compulsory process favors Chicago because there are so few potential witnesses subject to this Court's subpoena power. The Court need not address that factor, however, because the other factors favoring Chicago are strong enough to establish it as a "clearly more convenient forum."

Minnesota, where one would also expect relevant evidence to be. The possibility that more evidence might be located in the United Kingdom than in Chicago or anywhere else does not help RSI because the "question is *relative* ease of access, not *absolute* ease of access."[2] *In re Radmax Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). Given the required comparison between Chicago and Galveston, the "ease of access to sources of proof" factor easily favors transfer because the only identified evidence in the Southern District of Texas relates to one installation of the allegedly infringing product in Corpus Christi.

For much the same reasons, the factor considering the convenience of witnesses also favors transfer. The Northern District of Illinois is far more convenient to witnesses who are employees of VPS and RSI than is the Southern District of Texas. And the inconvenience of all those witnesses having to travel to Galveston for trial is considerable given that "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317.

RSI contends that the SmartAlarm Gold lessee in Corpus Christi may be a

---

[2] Of course, documents are likely to be transmitted electronically during discovery in this case. But the Fifth Circuit has held that this factor nonetheless remains one that courts need to consider in making the convenience assessment. *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

key witness because of the need for a customer to testify at the damages stage. The Court has doubts about that proposition; but even accepting it as true, the convenience of that single witness does not overcome the numerous potential witnesses in Chicago and Minnesota. And to the extent the testimony of customers or potential customers is needed, the Chicago area is likely to have a deeper pool of potential witnesses for that purpose. This factor therefore also favors transfer. *See Network Prot. Scis., LLC v. Juniper Networks, Inc.*, 2012 WL 194382, at *6 (E.D. Tex Jan. 23, 2012) (granting transfer to the Northern District of California because "[t]he number of witnesses residing in Texas, and any relevant information which they may provide, pales in comparison to the number of party and non-party witnesses with relevant information residing in Northern California.").

For these reasons, both the first and third private factors—relative ease of access to sources of proof and cost of attendance for willing witnesses—come down rather heavily in favor of transfer.

*2. Public Factors*

The public interest factors further weigh in favor of transfer. One factor that favors Galveston is court congestion, as this Court has noted that its light criminal docket often will allow civil cases to proceed to trial more speedily here. *See Perry v. Autocraft Invs., Inc.*, 2013 WL 3338580, at *3 (S.D. Tex. July 2, 2013).

But the more important public factor is a forum's local interest in the dispute because jury duty "ought not to be imposed upon the people of a community which has [minimal] relation to the litigation." *Volkswagen I,* 371 F.3d at 206; *see also Gapp v. Linde Gas N. Am., LLC,* No. H–10–4642, 2011 WL 1770837, at *3 (S.D.Tex. May 9, 2011) ("[J]urors in the Southern District of Texas should not be required to commit their time to resolve a dispute from [outside the district]." (citation omitted)). The only connection to this district that RSI identifies is the single use of the allegedly infringing product in Corpus, which is more than 250 miles from the Galveston courthouse. More fundamentally, a forum's local interest in hearing a patent infringement case based on the location of a single infringing user is not compelling when the product is used in many locales. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (noting that even though several infringing vehicles were sold in East Texas, the allegedly infringing vehicles "were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue"); *GeoTag, Inc. v. Starbucks Corp.*, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) ("When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district." (citation omitted)). In contrast, a district does have a significant local interest in a patent case when one of the parties is located in its

borders, *see id.* at *7 (noting that the location of both the plaintiff and defendant affects the local interest factor in patent cases), and the only American alleged infringer in this case is based in Chicago.

*3. The Overall Balance*

Balancing the public and private factors discussed above leads to a clear result. The strong private factors favoring the Northern District of Illinois, combined with that forum's stronger local interest in hearing this case, easily outweigh the court congestion factor favoring the Southern District of Texas. At the end of the day, Galveston's connection to this case is tenuous at best. The Court therefore concludes that the Northern District of Illinois is a "clearly more convenient" forum than the Southern District of Texas. *Volkswagen II*, 545 F.3d at 315.

## III. CONCLUSION

For the reasons discussed above, the Court **GRANTS** VPS's motion to transfer venue (Docket Entry No. 15) and **TRANSFERS** this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).

**SIGNED** this 4th day of October, 2013.

Gregg Costa
United States District Judge