IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RSI VIDEO TECHNOLOGIES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 7260 |
| | ) | |
| VACANT PROPERTY SECURITY, LLC | ) | |
| VACANT PROPERTY SECURITY | ) | |
| LIMITED, VPS GROUP INC., and | ) | |
| QUATRO ELECTRONICS LIMITED | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On May 6, 2013, Plaintiff RSI Video Technologies, Inc. ("RSI") filed a four count "Original Complaint for Patent Infringement" (Dkt. No. 1) ("Complaint" or "Compl.") in the Southern District of Texas against Defendants Vacant Property Security, LLC, Vacant Property Security Limited, VPS Group Inc., and Quatro Electronics Limited (collectively "Defendants"). RSI has alleged Defendants infringed several of RSI's patents concerning security systems. (Compl. ¶ 2.) This case was transferred to this court on October 4, 2013, (Dkt. No. 26), received October 10, 2013 (Dkt. No. 27), and assigned to this court on October 28, 2013 (Dkt. No. 30).

Before the court is "Plaintiff's Motion for Default Judgment and Entry of Default" (Dkt. No. 42) ("MDJ"). RSI seeks an order entering a default judgment against defendant VPS Group, Inc. for failure to respond or defend itself against this lawsuit. (MJD at 4.) In opposition (Dkt. No. 52) ("Opp'n), the three named defendants other than VPS Group, Inc. (the "Existing Defendants") respond that VPS Group, Inc. is not a legal entity. (Opp'n at 2-4.) The Existing

Defendants, however, admit that the phrase "VPS Group" is "a short-hand phrase used by VPS Holdings Ltd. to identify a set of affiliated and related companies." (*Id*. at 4-5.)

For the reasons stated in this order, the court denies RSI's motion for default judgment, and because of the Existing Defendants' admission that the term "VPS Group" was used to "identify a set of affiliated and related companies", the Existing Defendants are ordered to file in this court's record by no later than March 17, 2014 at 5:00 p.m. CDT a list of all entities affiliated in any way to the Existing Defendants to which the Complaint's subject matter pertains.

## BACKGROUND

On June 17, 2013, prior to this case being transferred to this court, RSI requested waiver of service of process from opposing counsel. (MDJ, at Ex. B.) Opposing counsel signed and returned the waivers for each of the Defendants named in this case, including VPS Group, Inc. (*Id*.) On August 16, 2013, Existing Defendants Vacant Property Security LLC, Vacant Property Security Limited, and Quatro Electronics Limited filed an Answer (Dkt. No. 14) (the "Answer") and a Motion to Transfer Venue to this court. (Dkt. No. 15.) VPS Group, Inc. was not included in the Answer or the Motion to Transfer Venue. (*Id*.)

In response, RSI asked the court to "enter default and render a default judgment", because "VPS Group, Inc. did not file a responsive pleading or otherwise defend the suit within 60 days" of receiving the service waiver. (MDJ at 3 (citing FED. R. Civ. P. 4(d)(3)).) RSI justifies this step by arguing that "an entity called VPS Group has held itself out as a legal entity in several ways." (*Id*. at 3-4.) To support this claim, RSI notes that counsel "agreed to waive service on behalf of VPS Group, Inc.", the VPS website "refers to a 'VPS Group'", and during settlement negotiations Mark Silver, CEO of VPS Holdings Limited, which is not an Existing

Defendant, presented a business card, "which represented 'VPS Group' as a corporate entity with the words 'VPS Group' at the top of the card." (*Id*. (citing Exs. B-D).)

Existing Defendants respond that "VPS Group Inc. does not exist" and that "[i]t never has." (Opp'n at 1.) According to Existing Defendants, there is "no way to collect damages or enforce a judgment against a non-existent entity." (*Id*.) Existing Defendants claim that "counsel for VPS agreed to accept a Waiver of Service for all named defendants" "[i]n a gesture of cooperation, and in an effort to permit the litigation to proceed efficiently". (*Id*. at 2.) Existing Defendants then cite a litany of instances where they disclosed to RSI that VPS Group Inc. did not exist. (*Id*. at 2-3.)

Existing Defendants respond to RSI's evidence that VPS Group "held itself out as a legal entity" as follows. Because waiving service and receiving Mr. Silver's business card occurred after the Complaint was filed, RSI must have included VPS Group, Inc. in the Complaint "based solely upon their unreasonable interpretation of" VPS's website. (*Id*. at 3.) RSI then notes that the title "Inc." is not even employed in the United Kingdom and that a "routine query into the incorporation records in the United Kingdom" shows that "VPS Group Inc. does not exist." (*Id*.)

Existing Defendants also argue that default judgment runs counter to Seventh Circuit precedent "in this hotly contested matter", because the Seventh Circuit favors "trial on the merits" "over default judgments". (*Id*. at 5 (citing *Ellingsworth v. Chrysler*, 665 F.2d 180, 185 (7th Cir. 1981); *Isby v. Clark*, 100 F.3d 502, 504 (7th Cir. 1996)).) Finally, Existing Defendants argue that the Federal Rules of Civil Procedure permit this court to relieve them from any default judgment. (*Id*. at 5-6 (citing Fed. R. Civ. P. 55(c), 60(b)).) According to Existing Defendants, this relief is appropriate where any default was the product of mistake or inadvertence, the parties did not engage in abuse or cause any prejudice, and where non-frivolous confusion occurred with no showing of bad faith or gross neglect. (*Id*.)

In Reply (Dkt. No. 55), RSI asserts that Existing Defendants admit that "VPS Group" is "a short-hand phrase used by VPS Holdings Ltd. to identify a set of related companies." (Opp'n at 4-5.) As a matter of law, RSI argues that the patent infringement statute (35 U.S.C. § 271) entitles it to relief from *whoever* may be involved in the alleged infringement—whether that be VPS Group directly or a set of affiliated and related companies. (Reply at 3.) Here, according to RSI, since service was confirmed and waived, the Federal Rules mandated that VPS Group answer. (*Id*. at 4.) This would have provided RSI the opportunity to conduct discovery on VPS Group to investigate whoever among its affiliates and related companies is engaging in infringement. (*Id*.) Without such discovery, or Existing Defendants identifying the set of VPS Group companies involved, RSI, and this court, are left to guess what actual entities within "VPS Group" are proper defendants. (*Id*. at 5.)

## LEGAL STANDARD

A court may enter default and render a default judgment against a party who has failed to file a responsive pleading or otherwise defend against suit. *See* Fed. R. Civ. P. 55(a), (b)(2). However, under Fed. R. Civ. P. 55(c), a court "may set aside an entry of default for good cause", and under Fed. R. Civ. P. 60(b) "it may set aside a default judgment". In the instant action, this court is only concerned with Rule 55(c), because the court has not entered a final default judgment for RSI. *See Merrill Lynch Mortgage Corp. v. Narayan,* 908 F.2d 246, 252 (7th Cir. 1990).

The Seventh Circuit has held that a "district court's eventual [Rule 55(c)] decision" deserves "great deference", *Swaim v. Moltan Co.,* 73 F.3d 711, 722 (7th Cir. 1996), and therefore such a determination will only be reversed for abuse of discretion, *Sun v. Bd. of Trs. of the Univ. of Ill.,* 473 F.3d 799, 810 (7th Cir. 2007). These procedures bring "to bear the district court's fact finding function and unique knowledge of the case and maintain[] the court of appeals' role as a forum for resolving disputed questions of law—not fact." *Swaim*, 73 F.3d at 719.

Under Rule 55(c), a party seeking to vacate an entry of default prior to the entry of final judgment must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630-31 (7th Cir. 2009).

To establish good cause for default, a party must "show a good faith reason for failing to appear", which means that relief from default can only be granted "where the actions leading to the default were not willful, careless or negligent." *Swaim*, 73 F.3d at 721. To demonstrate a "meritorious defense" exists, the party seeking relief from the default need not show the party's defense will "beyond a doubt, succeed in defeating a default judgment", but the party's defense must be "one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *On a Roll Trucking v. Superior Freight*, No. 10-7687, 2011 WL 1114505, at *2 (N.D. Ill. Mar. 25, 2011) (Dow J.).

The Seventh Circuit has explicitly stated that its "cases articulate a policy of favoring trial on the merits over default judgment." *Id.* (citing *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.,* 726 F.2d 1202, 1205 (7th Cir. 1984) (collecting cases)). "A default judgment, like a dismissal, is a harsh sanction which should usually be employed only in extreme situations, or when less drastic sanctions have proven unavailable." *N. Cent. Ill. Laborers Dist. Council v. S.J. Groves & Sons Co., Inc.*, 842 F.2d 164, 167 (7th Cir. 1988). The Seventh Circuit, however, has also recognized that a district court "has a responsibility to keep their court calendars as current as possible", and that "[t]his responsibility requires compliance with the rules of procedure and finality of judgment." *Id.*

To provide guidance in resolving these potentially competing concerns, the Seventh Circuit has noted that the "willfulness of the defaulting party's actions is the 'common thread'

5

which runs through" its review of default judgments. *Id.* (quoting *C.K.S. Eng'rs*, 726 at 1205). The Seventh Circuit has also provided a list of factors a district court may consider during Rule 55(c) analysis, which includes "the burden on [the district court's] docket", "reliance on the default by the nonmoving party", "the policy considerations favoring termination of stalled litigation", and the "possibility of injustice" based on the merits of a party's claim versus the "proffered excuses for the default." *Swaim*, 73 F.3d at 722.

## ANALYSIS

I. VPS Group, Inc. & VPS Group

This court is satisfied that a specific legal entity named VPS Group, Inc. does not exist. William Kolegraff, counsel for Existing Defendants, represents in his sworn declaration ("Kolegraff Decl.") that on multiple occasions he informed RSI's counsel that VPS Group Inc. did not exist. (Dkt. No. 53-1, Kolegraff Decl. ¶ 11-12.) Existing Defendants have also consistently maintained in their papers that VPS Group, Inc. does not exist. (*See, e.g.*, Opp'n at 1, 2, 4; Dkt. No. 13, Jt. Discov. Plan at 1; Answer at 2.) Finally, Mark Silver and James O'Brien, executives for Existing Defendants, have declared under penalty of perjury that VPS Group Inc. does not exist. (Dkt. No. 53-3, Silver Decl. ¶¶ 5-6; Dkt. No. 17, O'Brien Decl. ¶ 3.)

Again, RSI argues that (1) VPS Group exists separately from any VPS Group, Inc., (2) VPS Group has held itself out as a legal entity, and (3) therefore default judgment may be entered against VPS Group. (MDJ at 3-4.) However, this court is persuaded, for the purposes of this motion, by existing Defendants' counter representation that VPS Group merely refers to a set of affiliated and related companies. (Opp'n at 4-5 (stating that VPS Group "is just a short-hand phrase used by VPS Holdings Ltd. to identify a set of affiliated and related companies" and that VPS Group "is a term of convenience."); Dkt. No. 53-3, Silver Decl. ¶ 6 (substantially

similar).) Given these sworn statements, the court believes rendering a default judgment against a currently unspecified set of entities would be a sloppy procedural course, especially in light of the relief the Court is ordering as explained in Section III of this opinion below.

This court is additionally unconvinced by the evidence RSI offers to rebut the above finding of fact for the purposes of this motion. First, RSI points to counsel's acceptance of service for VPS Group, Inc. as evidence that VPS Group held itself out as a legal entity. (MDJ at 3.) However, this court finds credible the alternative explanation Existing Defendants offer, namely that accepting service was merely "a gesture of cooperation" and "an effort to permit the litigation to proceed efficiently". (Opp'n at 2.) The email correspondence between counsels on the issue of accepting service shows little more than Existing Defendants' counsel accepting service as a matter of course to expedite the litigation. (Dkt. No. 55, Ex. A.) Existing Defendants' counsel has also represented that he basically attempted to retract the acceptance of service for VPS Group, Inc., by repeatedly explaining that VPS Group, Inc. did not exist and presumably would not answer the Complaint. (Kolegraff Decl. ¶ 11-12.)

Next, RSI argues that the portions of Existing Defendants' website, referring to VPS Group, establish that VPS Group has held itself out as a legal entity. (MDJ at 3-4 (citing Ex. C).) The court finds the references RSI points to consistent with Existing Defendants' explanation that VPS Group is short-hand or a term of convenience for a set of affiliated and related entities. (Opp'n at 4-5; Dkt. No. 53-3, Silver Decl. ¶ 6.)

Taken as a whole, the VPS website does not convey that VPS Group is some non-descript corporate parent or controlling organization as RSI would have the court believe. This conclusion is supported by the "Contact Us" page that Existing Defendants cite for the court. (Opp'n at 3-4.) Without mentioning VPS Group, that page directs users to contact VPS

Holdings Ltd—the entity this court believes is likely to be the corporate parent.[1] (Kolegraff Decl., Ex. G.) The "Our History" webpage, which RSI actually directs the court to, also supports the provisional finding that VPS Holdings Ltd is the likely parent organization. (MDJ at 3-4.) That page states that VPS Group was founded in 2003 and contains a timeline noting that VPS Holdings Ltd. was created in the same year. (MDJ, Ex. C.)

Finally, RSI argues that Mark Silver's business card, presented during settlement negotiations with RSI, evidences that VPS Group has held itself out as a business entity. RSI bases this claim on the fact Silver's card had the words "VPS Group" at its top. (MDJ at 4, Ex. D.) Having reviewed this business card (MDJ, Ex. D), this court also finds it consistent with Existing Defendants' admission that VPS Group is short hand for a set of entities. It would defy common sense for this court to negatively reflect upon such short-hand. Mr. Silver was under no obligation to formally catalogue all his corporate relationships in laundry list fashion on a seemingly innocuous business card he presented at settlement negotiations.[2]

II. The Inappropriateness of Default Judgment

As discussed above, this court will not enter default judgment against either the non-existent VPS Group, Inc. or VPS Group which, for purposes of this motion, seems to be short-hand for an arrangement of corporate entities. However, even assuming that VPS Group could support a default judgment, the court would exercise its discretion to provide a less draconian remedy. RSI forcefully argues that the patent infringement statute entitles it to relief from *whoever* is involved in the alleged infringement, including VPS Group as an alleged *dba*. (Reply at 3.) While

---

[1] For legal purposes, corporations customarily list their parent in this webpage section.
[2] Neither party briefed the issue of whether weighing the business card is even permissible considering it was presented at a settlement negotiation and potentially protected under Federal Rule of Evidence § 408. Because the parties have not raised the issue, the court does not find it necessary to consider the matter thoroughly. However, suffice it to say, the court finds RSI's attempted use of this document less than becoming.

it may be true that RSI is entitled to relief from whoever infringed on its patent, it does not follow that RSI is entitled to the default judgment it seeks here.

As discussed above, under Fed. R. Civ. P. 55(c), this court "may set aside an entry of default for good cause"—a decision the Court of Appeals will accord "great deference". *See Swaim*, 73.F.3d at 722. Under Rule 55(c), a party seeking to vacate an entry of default prior to the entry of final judgment must show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 630-31 (7th Cir. 2009). However, the "harsh sanction" of default judgment should only be employed "in extreme situations", such as "when less drastic sanctions have proven unavailable", or when the willfulness of the defaulting party's actions is the "common thread". *See N. Cent. Ill. Laborers*, 842 F.2d at 167.

Existing Defendants have demonstrated as a factual matter that good cause exists for any alleged default. As discussed above, Existing Defendants have persuaded the court at present of the following facts: (1) counsel's acceptance of service was merely "a gesture of cooperation" "to permit the litigation to proceed efficiently", (Opp'n at 2.); (2) counsel essentially attempted to revoke this acceptance by informing RSI that VPS Group Inc. did not exist and could not answer the Complaint, (Kolegraff Decl. ¶ 11-12.); and (3) RSI insisted upon receiving such an answer as evidenced by the parties' motion practice, (Opp'n at 3 ("RSI now asks this Court to enter both a default and a default judgment against VPS Group, Inc."). Thus, any perceived default was not the product of willfulness, carelessness, or negligence, *Swaim*, 73 F.3d at 721, but rather the result of a good-faith legal dispute among the parties.

This court also holds as a factual matter that the second prong of Rule 55(c), quick action to correct, is inapplicable given the current facts. Again, from Existing Defendants' perspective, they were not required to provide an answer to the Complaint on behalf of the non-existent entity

VPS Group, Inc. *See, supra* at 6. Additionally, this is not a case where defendants have neglected to respond to plaintiffs' complaint in any fashion, which causes plaintiffs to speculate on what defenses will be made. Instead, it is undisputed that Existing Defendants filed their Answer in a timely fashion, and Existing Defendants interest are in all likelihood the same as any other potential VPS corporate entities. With an Answer in hand from likely similarly situated entities, RSI fails to convince the court it has suffered prejudice from a lack of notice of likely defenses. In such a case, it makes little sense for this court to draconically enter a default judgment against a currently unknown set of potential defendants. *See Budget Rent-A-Car Sys. v. Pratt*, No. 94-6068, 1995 WL 505950, at *1 n.1 (N.D. Ill. Aug. 28, 1995).

The court also holds that Existing Defendants' have satisfied the meritorious defense prong for Rule 55(c) relief, by raising "a serious question regarding the propriety of a default judgment" "supported by a developed legal and factual basis." *On a Roll Trucking*, 2011 WL 1114505, at *2. As discussed above, Existing Defendants have already provided a timely answer to the Complaint. (Dkt. No. 14.) In its Answer, Existing defendants set forth several legal theories as affirmative defenses that cause this court to question the propriety of entering a default judgment. (*See, e.g.*, Answer ¶¶ 45-49.)

Finally, this is a hotly contested matter as evidence by the parties' willingness to engage in motion practice on a dispute that the court expects counsel usually could have resolved. The court has kept this fact in mind while considered the factors the Seventh Circuit has provided for Rule 55(c) relief. *Swaim*, 73 F.3d at 722. Under this test, the court believes it would be "unjust" to enter a default because of a good faith legal dispute on whether an alleged entity was required to answer the complaint. There is no way RSI in any way "relied" upon this default, considering it was put on notice by Existing Defendants' Answer that they would be contesting the suit.

III. Ordered Relief

Even though Existing Defendants have in several instances referred to VPS Group on their website, (MDJ, Ex. C.), and they accepted service initially on behalf of VPS Group, Inc., (*Id.*, Ex. A.), Existing Defendants have only now admitted that there exists a series of related and affiliated entities they have referred to as "VPS Group." (Opp'n at 4-5.)

RSI suggests that Existing Defendants have attempted to hide these other entities which may be proper defendants in this case. (Reply at 5-6.) The court cannot affirm RSI's conclusion at this juncture, but the court recognizes that having the Existing Defendants, who admit that "VPS Group" is short-hand for "a set of affiliated and related companies", identify those entities and their individual relationships to the conduct alleged by RSI in its Complaint would remedy the situation.

To assure RSI such gamesmanship is not occurring, and in the interest of efficiently administering justice, the court orders the following. The court orders the Existing Defendants to review their corporate organization and file in this court's record a list of all entities affiliated in any way to the Existing Defendants to which the subject matter of the Complaint pertains by March 17, 2014 at 5:00 p.m. CDT. During this disclosure, Existing Defendants must provide enough information to permit RSI to evaluate whether the entity should properly be added to the Complaint, but no more. RSI is granted leave to file a First Amended Complaint, if RSI desires, naming additional entities as defendants by March 31, 2014

The Court cannot emphasize the following enough. A blanket denial with little effort or analysis of any entity having any connection to the subject matter of the Complaint will not satisfy this order. However, the court has no desire to prejudice the Existing Defendants through their disclosures. No disclosure of any entity being touched upon by the subject matter of the

11

Complaint will in any way be construed as an admission or evidence of guilt for the pendency of the proceedings without a further order of this court.

## CONCLUSION

RSI's Motion for Default Judgment and Entry of Default (Dkt. No. 42) is denied in its entirety. The court orders the Existing Defendants to review their corporate organization and file in this court's record a list of all entities affiliated in any way to the Existing Defendants to which the subject matter of the Complaint pertains. Existing Defendants must complete this review and convey these results to RSI by March 17, 2014 at 5:00 p.m. CDT. RSI is granted leave to file a First Amended Complaint, if RSI desires, naming additional entities as defendants by March 31, 2014. The case is set for a report on status at 9:00 a.m. April 15, 2014.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

Date: March 10, 2014